IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMY JO CASERTA,                        )
             Plaintiff,              )
                            )
       v.                           )           Civil Action No.  05-1467
                            )
JO ANNE B. BARNHART,                   )
Commissioner of Social Security,       )
             Defendant.             )

MEMORANDUM OPINION

**March 30, 2006**

**I.      Introduction**

Plaintiff Amy Caserta brings this action pursuant to 42 U.S.C. § 1383(c)(3) of the Social

Security Act ("Act"), which incorporates by reference 42 U.S.C. § 405(g), seeking review of the

final determination of the Commissioner of Social Security ("Commissioner") denying her

application for Supplemental Security Income ("SSI").  Consistent with the customary practice

in the Western District of Pennsylvania, the parties have submitted cross motions for summary

judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is not

supported by substantial evidence, and therefore will grant plaintiff's motion for summary

judgment in part and deny the Commissioner's motion for summary judgment.

**II.     Procedural History**

Plaintiff originally filed for SSI on August 12, 2002, alleging degenerative joint

syndrome of the lower back, asthma and depression.  Upon denial, plaintiff sought and received

a hearing before ALJ Michael F. Colligan on December 18, 2003.  Plaintiff, represented by

counsel, testified, as did a vocational expert ("VE"), Dr. Leon Reid.  (R. 36-56) On March 26,

2003, the ALJ issued his decision denying SSI and finding plaintiff suffered from depression and

degenerative changes to the lumbar and sacral joints, both of which were "severe" under 20

C.F.R.§ 416.920(b), but that plaintiff did retain the residual function capacity ("RFC") to

perform a significant range of sedentary work and, given her age, education, and unskilled work

experience, plaintiff was not disabled.  (R. 18)

Plaintiff filed a Request for Review by the Appeals Council on April 8, 2004, which was

denied on September 8, 2005.  Plaintiff then filed the claim and appeal currently before this

court on cross motions for summary judgment.

III.    **Statement of Case**

Plaintiff was born November 11, 1963 and was 39 years of age at the date of her hearing

before ALJ Colligan.  (R. 15) Her work history is as a packer and waitress, both of which are

considered light and unskilled, and her education is a 10th Grade-level.  (R. 37-38, 57) On April

24, 2001, Plaintiff was first admitted via the emergency department at Monongahela Valley

Hospital with cough and shortness of breath with associated chills, fatigue and chest pain.  (R.

217) A chest x-ray showed the plaintiff's lungs were clear.  However, plaintiff received

spontaneous aerosol treatments, Zithromax and Vioxx and was discharged with Flovent,

Combivent, Vioxx and Prednisone and was advised to stop smoking.

Upon follow-up with Dr. A. Jalil on May 17, 2001, plaintiff was told to continue the

course of treatment previously recommended via the Monongahela Valley Hospital ER and was

prescribed a nicotine patch.  (R. 194) An additional chest x-ray on July 9, 2001 appeared normal.

(R. 204) However, Dr. Raymond F. Nino, M.D., conducted an examination on December 6,

2001, at the request of the Social Security Administration (SSA), wherein he noted wheezing and diagnosed obstructive pulmonary disease and asthma, as well as anxiety neurosis.  He further assessed no physical limitations, but checked-off boxes indicating that environmental restrictions, requiring the plaintiff to work in environs free of dust, humidity, temperature changes, wetness and with good ventilation.  (R. 232-237)

Dr. Lanny Detore, Ed. D., performed a psychological evaluation on December 9, 2001 and diagnosed moderate, life-long panic disorder without agoraphobia and adjustment reaction disorder. However, Dr. Detore assessed no limitations and evaluated the plaintiff as good to fair in all functional limitation categories, except the ability to remember and carry out complex instructions.  Plaintiff reported no psychotic thought, suicidal ideation or perceptual disturbance. (R. 225-231)

On December 13, 2001, plaintiff underwent a pulmonary function test, which reported normal functioning and was not suggestive of restrictive lung disease.  Moreover, while plaintiff's flow rate was 78% of predicted, it improved with bronchodialator therapy.  (R. 239-48) On January 24, 2002,  Dr. John B. Martin, M.D. provided a second opinion, noting that, while her asthma was not completely under control, plaintiff's lungs were clear aside from some expiratory wheezing.  Dr. Martin also advised plaintiff to continue treatments as originally prescribed with the addition of Uniphyl and Zithromax.  (R.316-17) Upon performing a follow-up exam, Dr. Martin reported improvement with Uniphyl.  (R.314)

Around the same time, plaintiff underwent an MRI of her lumbar spine, which showed only mild degenerative changes.  (R. 302) As well, Dr. Douglas Schiller, Ph.D., undertook an examination of the plaintiff's mental health records and Dr. V. Rama Kumar, M.D. reviewed plaintiff's physical health records on behalf of the Social Security Administration.  (R. 249-74)

3

Dr. Schiller completed a psychiatric review technique form and mental residual functional capacity assessment indicating mild restriction of daily living and moderate difficulty in social function as well as maintaining concentration, pace and persistence, and no evidence of any episodes of decompensation.  (R.263)  Dr. Schiller further opined that plaintiff could perform routine, repetitive substantially gainful activity.  (R. 261)  Dr. Kumar determined that plaintiff was capable of performing medium work that did not expose her to concentrated amounts of fumes, odors, dust, gasses or poor ventilation.  (R. 271)

On March 22, 2002, plaintiff sought further treatment for severe dull aching pain, numbness and stiffness across her low back with pain radiating down her left leg.  (R. 370-72)  At that time, Dr. John K.S. Lee, a physiatrist, assessed her as having left sciatica secondary to degenerative disc disease and facet joint arthritis; cervical and lumbro-sacral spine syndrome; cervicogenic cephalgia; migraine headache and severe depression.  Dr. Lee prescribed physical therapy, as well as nerve blocks, nerve conductivity testing and prescriptions for Ultram, Paxil and Elavil.  The nerve conductivity test, however, found normal nerve conduction and non-specific EMG with no evidence of acute lumbrosacral radiculopathy or focal nerve denervation.  (R. 276).  Subsequently, Dr. Lee administered nerve blocks on May 8, June 19, and July 31, 2002.  (R. 310-12)

On September 12, 2002, Dr. Martin again saw plaintiff for asthma and noted that plaintiff was in no distress, but had acute fine wheezing.  Because plaintiff had reported her treatment regime as consisting only of Alupent as needed, Dr. Martin switched plaintiff's medication to Combivent four-times daily and referred her to a pulmonary function study.  Similarly, in November of the same year, Dr. Nino again examined plaintiff.  (R.319-24) He reported plaintiff as being treated with Albuteral as needed, as well as a nebulizer four-times daily, as well as

4

Paxil twice daily and hydrocodone every four to six hours.  Dr. Nino's physical examination, while noting that plaintiff exhibited mild expiratory wheezes, stated that plaintiff's neurological function and range of motion were normal.  He diagnosed asthma and depression, but reported no limitations other than environmental.  (R. 320-21)

Around the same time, Roger Glover, Ph.D., undertook a review of plaintiff's records at the request of the SSA and completed a psychiatric review technique form.  Dr. Glover again found only mild restrictions of daily activities, mild difficulties in maintaining social function and concentration, persistence and pace, but no episodes of decompensation.  (R. 325-35)  Since that time, plaintiff has undergone psychotherapy approximately every two weeks with a Dr. Malayole at Centerville Clinic[1]. (R. 38-39)  Records from a psychiatric exam on September 24, 2003 show that plaintiff is well-oriented without suicidal ideation or hallucination and has intact cognitive function.  The record further indicates that the evaluating physician ruled out bi-polar disorder and determined the plaintiff had a Global Assessment of Functioning score of 70.  However, it appears in the record that the evaluating physician also determined that plaintiff has marginal insight into her condition and no motive for change.  (R. 405)

Dr. Frank Bryan, M.D., also reviewed plaintiff's records and completed a Residual Function Capacity Assessment on November 26, 2003 in which he determined that plaintiff could perform light work.  (R.340-49) However, the evaluation summary from plaintiff's most recent examination for asthma performed by Dr. James R. Powell, M.D., on May 13, 2003, stated that plaintiff is again smoking and suffers from a night-time cough. (R.388)  Dr. Powell reported in the summary that plaintiff's chest was mildly hyper-inflated and exhibited scattered

---

[1]No additional information pertaining to this individual, including credentials or full name, is evident in the record or any other documents before the court.

wheezes and a few rhonchi and that tests revealed the presence of a moderately severe airflow obstruction caused by asthma, bronchitis and tobacco use. (R. 389)

At her hearing, plaintiff testified to suffering asthma attacks weekly, using a nebulizer three times daily and Albuterol, Serevent and Advair daily.  (R.40-42) She further testified to sciatica and degenerative arthritis, requiring nerve block treatments every six weeks.  (R.38) Plaintiff further testified that the associated pain limited her to sitting, standing or laying for 30 minutes at a time and that, due to her depression, she cried daily and often remained in bed for extended periods of time.  (R. 40-51)

Nevertheless, the vocational expert testified that a person with plaintiff's skills, education and background, who was limited to sedentary work that allowed an individual to alternate sitting and standing every 10-20 minutes and required no repetitive bending, use of foot pedals or more than simple, routine tasks in an environment free of dust temperature extremes, fumes and odors and with minimal contact with the public, would qualify for over 200,000 jobs in the national economy.  (R. 52-53) The vocational expert further testified that if the limitations of spontaneous decomposition and frequent absenteeism due to psychotherapy appointments claimed by plaintiff were adopted, such a person could only work part-time.  (R.53) However, the VE opined that a person with a Global Assessment of Functioning score of 70 would be able to perform the available jobs.  (R.54)

Based on this testimony and the record evidence, the ALJ found that plaintiff's impairments did not meet or exceed any impairment listed in Appendix 1, Subpart (P), Regulation No. 4.  (R. 16) Specifically, the ALJ held that Dr. Nino's finding that plaintiff had no limitations based on a normal straight leg-raise, station, gait, motor power, range of motion and nerve conductivity study, as well as the lack of neurological deficits supported a finding of no

physical disability. (R.17)  The ALJ further found that plaintiff's own description of her daily living rebutted her claim of debilitating leg pain, and that her GAF of 70, lack of suicidal ideation and hallucination, and record evidence that plaintiff is well-oriented and has intact memory, rebutted plaintiff's claim of debilitating depression.  (R.16)  Nevertheless, the ALJ did find that mild degenerative joint syndrome limited plaintiff to sedentary work that allowed her to alternate between sitting and standing every 10 to 20 minutes, and that because plaintiff's asthma is not completely controlled, she is limited to working in environs free of dust, fumes, odors or temperature extremes.  (R. 16) As well, the ALJ found that plaintiff's GAF of 70 limited her to simple, routine, repetitive tasks and minimal contact with the public.

Specifically, the ALJ found,

4.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant can perform sedentary work that allows her to alternate sitting and standing every 10-20 minutes and does not require repetitive bending, use of foot or pedal controls, more than simple, routine, repetitive tasks or minimal contact with the public or exposure to temperature extremes, dust, fume or odors.

*   *   *

10.  The claimant has the residual functional capacity to perform a significant range of sedentary work. (20 CFR § 416.967)

11.  Considering the claimant's age, education, work history and residual functional capacity there are significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a packager and assembler.

12.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(f))

IV.     **Standard of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by

42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3].  Section 405(g) permits a district court to review

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

disability decisions rendered under Title II are pertinent and applicable to those rendered under

Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v.*

*Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

---

[2]

Section 405(g) provides in pertinent part:
>    Any individual, after any final decision of the [Commissioner] made after a
>    hearing to which he was a party, irrespective of the amount in controversy, may
>    obtain a review of such decision by a civil action . . . brought in the district court
>    of the United States for the judicial district in which the plaintiff resides, or has
>    his principal place of business. . .

42 U.S.C. § 405(g).

[3]

Section 1383(c)(3) provides in pertinent part:
>    The final determination of the Commissioner of Social Security after a
>    hearing under paragraph (1) shall be subject to judicial review as provided in
>    section 405(g) of this title to the same extent as the Commissioner's final
>    determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See*

*Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

     (2) in the event that claimant suffers from a less severe impairment, she will be deemed

disabled where she is nevertheless unable to engage in "any other kind of substantial gainful

work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. §

423 (d)(2)(A).  In order to prove disability under this second method, plaintiff first must

demonstrate the existence of a medically determinable disability that precludes her from

returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at

777.  Once it is shown that she is unable to resume her previous employment, the burden shifts to

the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age,

education and work experience, she is able to perform substantial gainful activity in jobs

available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*,

602 F.2d 55, 57 (3d Cir. 1979).

     Where a claimant has multiple impairments which, individually, may not reach the level

of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless

must consider all of the claimant's impairments in combination to determine whether,

collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122

("the ALJ must consider the combined effect of multiple impairments, regardless of their

severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's

eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the

individual's impairments without regard to whether any such impairment, if considered

separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § §
404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments,
provides:

> In determining whether your physical or mental impairment or impairments are of a
> sufficient medical severity that such impairment or impairments could be the basis of
> eligibility under the law, we will consider the combined effect of all of your impairments
> without regard to whether any such impairment, if considered separately, would be of
> sufficient severity.  If we do find a medically severe combination of impairments, the
> combined impact of the impairments will be considered throughout the disability
> determination process.  If we do not find that you have a medically severe combination of
> impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the
impairment must be considered before the [Commissioner] denies the payment of disability
benefits." *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria
specified in the listings, he must be found disabled if his condition is *equivalent* to a listed
impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory
statements that the impairments do not equal a Listed Impairment in combination or alone, but
rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he
or she found a claimant's impairments did not, alone or in combination, equal in severity one of
the Listed Impairments. *Fargnoli,*  247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to
whether claimant is unable to return to past employment or perform substantial gainful activities,
it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to
make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

**V.     Discussion**

Failure to Explain Disability Determination in Sequential Step 3

Under Step 3 of his sequential analysis, the ALJ must determine whether plaintiff's claimed impairments match or are equivalent to one of the impairments listed in Appendix 1 of Subpart P, Regulation No. 4, *Plummer*, 186 F.3d at 428, and must set forth reasons for his decision.  *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).  Here, the ALJ discusses in some detail the medical evidence before him, but fails to explicitly discuss the relationship between that evidence and the listed impairments in Appendix 1 or his basis for determining that

15

plaintiff's "severe" impairments do not meet such listed impairments.  The question, therefore, is whether the ALJ has satisfied his obligation to set forth the reasons for his decision such that his conclusions are not "beyond meaningful judicial review."  *Burnett*, 220 F.3d 112, 119 (3d Cir. 2000).  The Court holds that he has not.

Here, the ALJ failed to provide an explanation for rejecting medical evidence supportive of plaintiff's claim.  Most notably, there is ample evidence in the record supporting plaintiff's asthma claim.  Such evidence is not discussed in the ALJ's finding, including the pulmonary function studies performed on November 18, 2002 and May 13, 2003 which showed a moderate obstructive lung defect and moderately severe airflow reduction.  (R. 395, 389) Further, the ALJ makes no mention of this evidence although he determines that plaintiff's asthma is "not completely under control."  (R. 16)  Nor does the ALJ make mention of plaintiff's testimony regarding the frequency of her nebulizer treatments and asthmatic episodes or the restrictions placed on plaintiff thereby.

Moreover, the ALJ failed to provide a nexus between the medical evidence pertaining to plaintiff's claimed impairments and any listed impairments.  In *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119, 121 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that where an ALJ fails to mention any specific listed impairments or explain his reasoning for finding that a "severe" impairment did not meet one such listed impairment, the ALJ's findings are insufficient and must be remanded for a discussion of the evidence and explanation of the reasons supporting the ALJ's determination that the claimant's severe impairments do not meet any listed impairments.

Here, the ALJ stated only that, although "severe," plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments.  (R.18)  The ALJ did

not mention any specific listed impairments or discuss how the medical evidence of record related to his finding that the claimed impairments did not equal one of the listed impairments. Moreover, while the ALJ did discuss the medical evidence of record with some specificity, he did not discuss the relationship between such evidence and his findings.

<u>Failure to Consider Evidence Supportive of Claimed Impairments</u>

Because the Court will grant plaintiff's motion for summary judgment on the grounds outlined above, it does not reach plaintiff's claim that the ALJ failed to consider evidence supportive of her claimed mental impairments.  Nevertheless, the Court is concerned by the possible short-shrift the ALJ gave some of the above psychiatric evidence.  As stated above, the ALJ is obligated to consider *all* evidence when adjudicating a claimant's petition for SSI and specifically explain reasons for rejecting supportive evidence.  *Burnett* at 119-120 (3d Cir. 2000).  Upon remand, therefore, the ALJ must consider and account for all of the evidence relevant and material to plaintiff's claim of mental impairments in his determination.

**VI.    Conclusion**

The Court has reviewed the ALJ's findings of fact and decision, and determines that his Step 3 Analysis is deficient as described above.  Accordingly, the Court will grant the plaintiff's motion for summary judgment, in part, deny the Commissioner's motion for summary judgment, and remand for further proceedings.

An appropriate order will follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:    all counsel of record

17